## 67549. RHODES v. THE STATE.

BIRDSONG, Judge.

Gary Arnold Rhodes was convicted of voluntary manslaughter and sentenced to ten years, three to serve followed by seven on probation. He brings this appeal enumerating three alleged errors. *Held*:

1. In his first enumeration of error, Rhodes complains that the trial court erred in refusing to give a requested charge on involuntary manslaughter arising out of a "lawful act done in an unlawful

manner."

The facts relative to the lesser offense show that Rhodes and friends were parked in a parking area at a shopping center used by numerous residents in Fannin County as a place to congregate and visit with friends during the weekend. On the weekend of the homicide giving rise to the charge in this case, Rhodes and several friends went to the parking area and visited with friends. Rhodes and a couple of others sat in a car and talked and drank a small quantity of beer. While they were there, the decedent arrived and parked next to Rhodes' car. The decedent was a much larger and heavier man than was Rhodes. The decedent came over to the car and offered Rhodes and his companions something to drink and some "pills." Rhodes and his friends declined the offer. The decedent became angry and over a period of time became more and more angry and excited about the refusal to share his offer. The decedent at one point injected his head and shoulders into the car window next to Rhodes and invited Rhodes out of the car where the decedent threatened to "whip some ass."

At that point Rhodes stated he was apprehensive for his safety because the decedent was acting like a "wild man." Subsequently, Rhodes alighted from his car and walked to the rear of the car so that he was near to the decedent. The decedent walked up to Rhodes and struck Rhodes once in the chest. This caused Rhodes to stagger backwards. By his testimony, however, Rhodes at this point in time expressed no fear for his safety, suffered no appreciable harm to his person and made no attempt to leave. It was at this time that Rhodes testified that "the fight" began. Rhodes then walked up to the decedent and struck him several times in the head and face with his hands and kicked the decedent either in the chest or head area. The decedent crumbled and fell to the ground and could have struck his head on the bumper as he fell. At any rate, the decedent did not arise. Rhodes remained for a few moments and when the decedent did not get up from the ground, Rhodes left the scene. Later Rhodes learned that the decedent had been severely injured. In fact, he had suffered a subarachnoid and basilar subdural hemorrhage which caused his death.

At the trial of the issue, the trial court properly charged the jury, among others, on the principles of law of accident, justifiable homicide, self defense, mutual combat, involuntary manslaughter arising out of the commission of an unlawful act less than a felony, and simple battery. Rhodes raises no objection to the propriety of the charge of the court except as to the omission to charge on involuntary manslaughter arising out of the commission of a lawful act in an unlawful manner. It is appellant's contention that death in this case arose out of the possible use of excessive force during the exercise of the right

to defend himself.

We find no merit in this enumeration. OCGA § 16-3-21 in substance provides that a person is justified in using deadly force against another when and to the extent that he reasonably believes that such force is necessary to defend himself against the other person's imminent use of unlawful force. The use of defensive force however is not justified when the defender engages in combat by agreement and there was no evidence of withdrawal from the fight by Rhodes. OCGA § 16-3-21 (b) (3). OCGA § 16-11-32 defines fighting in a public place as an affray and classifies an affray as a misdemeanor.

Rhodes concedes that, though he may have been goaded into the fight, he voluntarily participated in the fight in a public place with the decedent. There is no question that the subsequent death was a direct result of that fight. By his own testimony, Rhodes admits that at the point of the fight he was not fearful for his life or his safety and willingly entered into mutual combat or an affray. As was said in *Crawford v. State*, 245 Ga. 89, 94 (263 SE2d 131): "Where a defendant [engages in an affray], he or she is guilty of a crime, reckless conduct . . . and thus the act is not a 'lawful act' within the meaning of Code § 26-1103 (b) [OCGA § 16-5-3 (b)]." Under the facts presented to the trial court and the jury, the requested charge was inapplicable and no error resulted in the refusal to give the same.

2. In his second enumeration, Rhodes contends that the trial court erred in allowing the State to use an oral statement made by appellant to a police offier which had not been delivered to appellant more than ten days prior to trial and which had been demanded by an appropriate motion for discovery. The facts show that appellant surrendered himself to the police when he heard that the decedent had been severely injured. He made an oral statement to the police in which he related the events leading up to the fatal fight including the threat by the decedent "to whip ass." In the oral statement, Rhodes admitted hitting the victim three or four times and kicking him. The next day, Rhodes executed a formal written statement in which he reiterated the occurrences leading up to and taking place during the fight. In the written statement, the full circumstances of the threat were not reflected and Rhodes said that he struck the victim once or twice and kicked him. At trial, the State elected not to introduce the written statement but to use the oral statement given to the investigating officer. When appellant objected to the use of the oral statement, both the investigating officer and the State indicated surprise at the objection. Both contended to the trial court that the written statement was considered the substantial equivalent of the earlier oral one. The trial court upon examination of both concluded the State had substantially complied with the discovery demand and allowed the State to enter appellant's oral statement.

Upon an appropriate motion to discover a pretrial statement rendered by the defendant, that statement must be tendered in its essential material parts and if it is oral or partially oral, the written rendition of the oral part need not be absolutely verbatim. OCGA § 17-7-210 (b). In this case the oral statement testified to by the police officer in fact contained the same material elements as the written statement. There was the threat to "whip ass" but the time of that threat (i.e., while the victim had his head and shoulders in the car) was not detailed; there was the admission that at least two (if not three or four) blows and a kick were inflicted. Such minor discrepancies as did appear were subject to exposure on cross-examination. Appellant made no showing of surprise as to the contents of the oral statement nor has he shown any prejudice from the admission of the oral statement. Under very similar circumstances, the Supreme Court held admission of an earlier oral statement did not violate appellant's discovery rights where the facts were slightly more detailed but not significantly different in substance. *Van Kleeck v. State*, 250 Ga. 551, 552 (299 SE2d 735). We find no error in the admission of the oral statement.

3. In his last enumeration, Rhodes urges it was error to refuse to allow the director of the state crime lab to be cross-examined upon the results of a blood alcohol test made of the blood of the deceased. After death, a urine and blood specimen was taken from the deceased. This was delivered to the State crime lab and appropriate tests conducted thereon. An electronic graph was produced from the urine test (similar to an X-ray). The trial court allowed the director to interpret this graph and give opinions based thereon. However, the witness testified that he had not observed the conduct of the test on the blood and thus could not verify the chain of custody or the regularity or accuracy of the tests conducted by subordinate chemists working in the laboratory. The trial court did not allow the expert to testify concerning the tests nor the result of those tests. There is no indication however that a document containing those results (either the death certificate or a business record) could not have been introduced. The trial court simply limited any examination as to the conduct of the tests and the result of those tests as opposed to a documentation of the result.

It is clear that the director did not observe the tests and did not conduct them himself, and thus any testimony by him as to the tests either would be mere speculation or hearsay. Under such circumstances, we cannot say the trial court erred in excluding the testimony as sought to be offered by appellant. See *Martin v. State*, 151 Ga. App. 9, 12 (5) (258 SE2d 711); *Collins v. State*, 146 Ga. App. 857, 860 (247 SE2d 602).

*Judgment affirmed. Quillian, P. J., and Carley, J., concur.*

DECIDED MARCH 8, 1984 —
REHEARING DENIED MARCH 26, 1984 — 

*E. Neil Wester III*, for appellant.

*Rafe Banks III, District Attorney, George W. Weaver, District Attorney*, from Appalachian Circuit, *Garry T. Moss, Assistant District Attorney*, for appellee.