## 73908. HILLMAN v. THE STATE.
### (354 SE2d 673)

BIRDSONG, Chief Judge.

Earl Hillman, the appellant, appeals his conviction of two counts of terroristic threats made to Officer Scott Smith and Deputy Sheriff Ken Smith. On March 28, 1986, Officer Scott Smith was called to the home of defendant's mother as a result of disturbance created by Hillman, who had been drinking. After speaking to Hillman and his mother, Officer Smith returned to the police station. A few minutes thereafter Smith was called to the same address to quell another disturbance between Hillman and his mother. Approximately one hour later, Officer Smith received his third call to the same residence and found that Hillman had left, walking. Officer Smith found and arrested Hillman a short distance away and placed him in the rear of his patrol car. Smith testified that Hillman, who was black, told Smith, who was white, that "he was going to kill my white . . . ." At the police station, Hillman again told Smith that he (Smith) "had to go to the grocery store, and someone would come up behind me and blow my brains out." The jailer and Deputy Sheriff Ken Smith overheard the threat made to Officer Smith in the police station. Officer Smith "took [Hillman] to be very serious. His demeanor, his attitude, his actions prior to his arrest . . . the whole way he acted, I knew that he was serious."

Deputy Sheriff Smith testified that appellant told him "he didn't like white people and that he would kill us. . . . He told me he'd kill me if he caught me on the street." The defendant brings this appeal from a jury verdict of guilty on both counts. *Held*:

Defendant alleges the trial court erred in permitting the State to use racially discriminatory strikes in selecting the jury, and that the explanation given by the district attorney for such strikes was insufficient. This issue is controlled by *Batson v. Kentucky*, 476 U. S. ___

(106 SC 1712, 90 LE2d 69), decided April 30, 1986, which is of comparatively recent vintage, and lacking sufficient aging, decisional precedent is scarce and trial procedure to effect compliance with its mandate is sometimes erratic. In the instant case, neither counsel nor the court thought to place in the record the composition of the jury. We were made aware only that the nine peremptory strikes exercised by the State were directed solely against blacks, and that the defendant was a black male. *Batson* established the principle that a State denies a black defendant equal protection of the law when it puts him on trial before a jury from which members of his race have been purposefully excluded "solely on account of their race. . . ." 90 LE2d at 76. A criminal defendant can establish a prima facie case of purposeful discrimination solely on evidence of the prosecutor's exercise of peremptory challenges at his trial. Once the defendant makes this prima facie showing, then the burden shifts to the State to come forward with a neutral explanation for its challenges to black jurors.

In the instant case, the prosecutor said the reason for his strikes was to obtain a "more mature juror . . . as opposed to a younger juror." The trial court's attention was directed to the fact that "almost all of the strikes that the State struck, except with one or two exceptions, were for younger people. . . ." The prosecutor argued that he attempted to get a "mature" jury because at the time of these alleged offenses the defendant was intoxicated and "mature" jurors would not "gloss over the actions that the State has accused this Defendant of. . . ." The district attorney admitted he would not be able to tell from observation of the venire which potential juror used alcohol or drugs, but "the odds are . . . that it wouldn't lie with the older generation." The prosecutor stated that "every older person that I could possibly select and put on the jury, I was striving to do it; it was toward those ends."

Of course, an appellate court cannot determine from the record whether the State's challenges were directed toward achieving an older jury, absent counsel or the court recording their observations as to age of the challenged jurors and the juror selected. Accordingly, we must rely to a great extent upon the findings of the trial court. And properly so, for the U. S. Supreme Court has cautioned us that "the trial judge's findings in the context under consideration here largely will turn on evaluation of credibility, [hence] a reviewing court ordinarily should give those findings great deference." *Batson*, supra, 90 LE2d 89 (fn. 21).

In the case at the bar, the trial court failed to make any findings or enter a ruling on the issue addressed in this appeal. *Batson* held that "[t]he trial court . . . will have the duty to determine if the defendant has established purposeful discrimination. . . . If the trial court decides that the facts establish, prima facie, purposeful discrim-

ination and the prosecutor does not come forward with a neutral explanation for his action, our precedents require that [defendant's] conviction be reversed." *Batson*, 90 LE2d 88-90. The trial court having failed to make these required rulings, this case is remanded to the trial court for its findings as to whether the facts established a prima facie case for purposeful discrimination, and if so, whether the State has sufficiently established a neutral explanation for its actions.

*Case remanded with direction. Deen, P. J., and Pope, J., concur.*

DECIDED MARCH 5, 1987.

*T. Lee Bishop, Jr.*, for appellant.
*Hobart M. Hind, District Attorney, Earl Jones, Melodie B. Swartzbaugh, Assistant District Attorneys*, for appellee.