### 74980. HILLMAN v. THE STATE.
(362 SE2d 417)

BENHAM, Judge.

Appellant was convicted of terroristic threats. In this second appearance of his case (see 182 Ga. App. 47 (354 SE2d 673) (1987)), appellant again challenges the trial court's finding that the prosecutor had provided a sufficiently neutral explanation for using nine of his peremptory strikes to eliminate nine black veniremen from the jury. We find no error in the trial court's ruling.

1. Under *Batson v. Kentucky*, 476 U. S. ___ (106 SC 1712, 90 LE2d 69) (1986), "[i]f the defendant can establish a prima facie case of racial discrimination in the prosecutor's exercise of his peremptory challenges, the prosecutor must explain his exercise of peremptory challenges, and demonstrate that racially neutral criteria prompted the exercise of his peremptory challenges." *Gamble v. State*, 257 Ga. 325 (357 SE2d 792) (1987). When questioned in this regard at the *Batson* hearing held immediately after voir dire was completed, the prosecutor explained that he eliminated most of the veniremen because they appeared to be relatively young, and he was trying to get an older jury. His theory was that a more mature jury would be less prone to consume drugs or alcohol, or to act irresponsibly when they did consume such substances. Appellant was a 43-year-old black man

who allegedly had been drinking when he committed the acts for which he was arrested. The prosecutor said that he struck juror No. 15, Plummer (age 30), because of his age and because he knew the district attorney; that he struck No. 25, Davis (age 25), because of her age and her unemployment; and that he struck No. 26, Bell (age 31); No. 33, Phillips (age 28); No. 34, Savage (age 28); and No. 36, White (age 26), all because of their youth. Phillips was also struck because of her employment at Legal Services. No. 37, Randall (age 41), was struck because the prosecutor knew of him and thought he "was a hard drinker." No. 39, Brunson (age 32), was struck because her family had close ties with appellant's family. The last venireman, No. 42, Clemons (age 29), was struck because of his youth and the prosecutor's dislike of the way his facial and cranial hair looked. The prosecutor's impressions about the ages of the persons he eliminated are borne out by the statistical information attached to the trial court's order after remand. The trial court found that the average age of the jurors struck by the State was 30, with a range of 25 to 41; and the average age of the jurors that were empaneled was 47, with a range of 27 to 74. The jury was composed of four black females, two black males, two white females, and four white males.

Appellant complains that the prosecutor's reasoning was insufficient to rebut the prima facie case of discrimination because he did not strike the 27-year-old white male who sat on the jury. However, the record indicates that the prosecutor's reason not to strike that person was because he was a minister and was adverse to alcohol. Since the voir dire was not taken down and there is no other indication of the extent to which the other veniremen were questioned about their opinions on alcohol and/or drugs, we cannot say that the "persuasiveness of [the] proffered explanation [is] magnified or diminished by the persuasiveness of companion explanations. . . ." *Gamble*, supra at 327. We find the prosecutor's reasons to be adequate in light of the *Batson* standard and affirm the trial court's findings. Compare *Gamble*, Division 6.

2. Appellant's remaining enumerations of error regarding his motions in limine, for directed verdict, for mistrial, and for a new trial were raised in his first appeal but, contrary to the State's assertion, were not resolved against him at that time. Since this court's earlier opinion only addressed the *Batson* issue, we will now examine those still remaining.

Appellant contends that the trial court erred in finding that the State complied with OCGA § 17-7-210 and therefore permitted testimony by the arresting officer-victim about statements appellant made while he was in police custody. The record indicates that at the committal hearing held approximately two months after appellant was arrested, the officer testified that appellant threatened to "blow my

brains out . . . and made several other threats." At trial, the officer testified that in addition to the other threats he made, appellant used specific words ascribing to the officer certain relations he allegedly had with his mother and describing the officer as being a certain orifice of his anatomy. Appellant moved in limine to keep the statements out, and his motion was denied. During the testimony, he moved for a mistrial, which the trial court also denied. The testimony was allowed, and appellant claims reversible error. Since the oral statement had been provided in writing by means of the officer's written report and the committal hearing transcript, and since the written rendition was not significantly different in substance from the oral statements, we find no error in the denial of the motions in limine and for new trial. *Rhodes v. State*, 170 Ga. App. 473 (2) (317 SE2d 285) (1984); *Tyson v. State*, 165 Ga. App. 22 (1) (299 SE2d 69) (1983).

3. In the course of the prosecuting attorney's direct examination of one of the victims, he asked how the victim knew appellant was talking to him and not someone else. The witness replied, "Well, he knew me; he'd been in jail several times before." Appellant made no objection but asked to approach the bench, where a sidebar conference was held. The record later indicates that during that conference, appellant moved for and was denied a mistrial. Another witness later testified that appellant "had been [under the influence of alcohol] on the other occasion he'd been brought into the jail . . . ," at which point the prosecuting attorney stopped the witness and asked another question. Appellant made no objection or motion at that time.

At the close of the evidence, appellant moved for a mistrial on the ground that the State had impermissibly placed his character in issue through the above-stated testimony. The trial court denied the motion, finding that the statements were inadvertent, unintentional, and did not rise to "the level of prejudice that would demand a mistrial." We agree. "The granting or refusing of a motion for mistrial is necessarily a matter largely within the discretion of the trial judge, and unless it is apparent that a mistrial is essential to the preservation of the right to a fair trial, the exercise of the judge's discretion will not be interfered with. [Cits.]" *Stanley v. State*, 250 Ga. 3 (2) (295 SE2d 315) (1982). We find no abuse of discretion in the trial court's denial of the motion. *Williams v. State*, 242 Ga. 757 (2) (251 SE2d 254) (1978); *Cochran v. State*, 177 Ga. App. 471 (3) (339 SE2d 749) (1986).

4. Appellant moved for a new trial, contending that although one of the jurors knew Deputy Sheriff Ken Smith, one of the victims who testified at trial, he denied that knowledge on voir dire. The motion was denied, since the juror's "knowledge of Mr. Smith was based upon having seen Mr. Smith in [the juror's] father's store prior to the trial . . . [and] that he did not know Mr. Smith personally, that he

had never socialized with him, and that he knew of him, like he knows of the Mayor . . . the only conversation that he ever had with Mr. Smith was of a business nature." There was no error committed in the denial of the motion for new trial, since there was nothing to show that the juror did not act as an impartial member of the jury, or that he had an ulterior or evil motive in "giving purportedly untrue answers." *Geiger v. State*, 129 Ga. App. 488, 494 (199 SE2d 861) (1973).

5. Finally, we find no merit in appellant's contention that his motion for directed verdict of acquittal should have been granted. Appellant was charged with two counts of committing terroristic threats. OCGA § 16-11-37 (a) states that one commits the offense "when he threatens to commit any crime of violence or to burn or damage property with the purpose of terrorizing another. . . ." The statute requires that the testimony of the party to whom the threat is communicated be corroborated.

The victims testified that after they arrested and booked appellant for disorderly conduct, he continually threatened to kill them if he saw them on the street; blow their brains out; and sneak up behind one of them and shoot him in the head. The victims testified that they took appellant seriously and became more cautious in their work in uniform. Another witness who was not a victim also corroborated the victims' testimony. The evidence was sufficient for a rational trier of fact to find appellant guilty beyond a reasonable doubt of terroristic threats. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Shepherd v. State*, 173 Ga. App. 499 (1) (326 SE2d 596) (1985); *Boone v. State*, 155 Ga. App. 937 (274 SE2d 49) (1980).

*Judgment affirmed. Banke, P. J., and Carley, J., concur.*

DECIDED OCTOBER 19, 1987 —
REHEARING DENIED NOVEMBER 3, 1987 — 

*T. Lee Bishop, Jr.*, for appellant.
*Hobart M. Hind, District Attorney, L. Earl Jones, Melodie B. Swartzbaugh, Assistant District Attorneys*, for appellee.