### 75609. ADAMS v. THE STATE.
(367 SE2d 871)

CARLEY, Judge.

Appellant was indicted for kidnapping, child molestation, and aggravated child molestation. The jury returned a guilty verdict only as to the crime of aggravated child molestation. Appellant appeals from the judgment of conviction and sentence that was entered by the trial court on the jury's guilty verdict.

1. The general grounds are raised in several enumerations of error.

There is no requirement that the testimony of the victim of child molestation be corroborated. See *Padgett v. State*, 175 Ga. App. 818 (334 SE2d 883) (1985). Nevertheless, the testimony of the victim in this case was corroborated in several material respects. From all of the evidence, the jury was authorized to find that appellant had committed an immoral or indecent act to the person of the child. See generally *Chapman v. State*, 170 Ga. App. 779 (1) (318 SE2d 213) (1984). The evidence would also clearly authorize a finding that appellant had done so with the intent to arouse his sexual desires. See generally *Bentley v. State*, 179 Ga. App. 287 (1) (346 SE2d 98) (1986). The evidence likewise authorized a finding that the commission of the act of molestation was accomplished by the use of such force as to have resulted in physical injury to the child. See generally *Keeler v. State*, 181 Ga. App. 208 (1) (351 SE2d 731) (1986). After a review of the entire record, we find that a rational trior of fact could reasonably have found from the evidence produced at trial, proof of appellant's guilt of aggravated child molestation beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). This is true notwithstanding appellant's acquittal on the two other crimes which allegedly arose out of the incident. See generally *Nelson*

*v. State*, 181 Ga. App. 455, 456 (2) (352 SE2d 636) (1987).

2. After voir dire but before the jury was sworn, appellant, relying upon *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), moved for disqualification of the jury because of the prosecutor's use of peremptory challenges to remove blacks from the jury. "This was timely. [Cit.]" *Wright v. State*, 186 Ga. App. 104 (1) (366 SE2d 420) (1988). See also *State v. Sparks*, 257 Ga. 97, 98 (355 SE2d 658) (1987). The trial court conducted a hearing. During that hearing, appellant attempted to make a prima facie case pursuant to *Batson.* The prosecuting attorney urged that appellant had failed to meet his burden under *Batson.* However, out of an abundance of caution, the prosecuting attorney did offer his racially neutral motivation for the exercise of his peremptory strikes. That explanation was that only those black prospective jurors who knew appellant or knew of him had been removed. After further extensive colloquy with counsel concerning the *Batson* motion, the trial court held as follows: "The motion will be denied based on the court's observation of the jury, the makeup of the jury, [and] the responses on voir dire that were made pursuant to questions asked by both sides." Appellant enumerates as error the denial of his *Batson* motion.

We note at the outset that *Powell v. State*, 182 Ga. App. 123 (2) (355 SE2d 72) (1987) is not authority for this court to order the remand of this case to the trial court for a hearing on the issue of whether appellant met his initial burden of making a prima facie case in support of his *Batson* motion. In *Mincey v. State*, 257 Ga. 500 (360 SE2d 578) (1987), a case so factually similar to this case that it fits it like a glove, our Supreme Court has construed the applicability of *Powell* in cases wherein a *Batson* motion is made. " 'All relevant circumstances' in the [*Mincey*] case, which *Batson* holds must be considered, include the facts that the prosecutor used seven of his 10 strikes to remove blacks from the venire; that the state accepted five black jurors prior to exhausting its strikes; that the state utilized five strikes on blacks, three on whites, and the race of two panel members was not noted on the record; and that there were at least three blacks on the jury. In *Powell v. State*, [supra], cert. denied, the Court of Appeals held that the fact that three blacks were on the jury of 12, was not determinative, and that '(t)he question is whether the state exercised *any* of its strikes for a racially discriminatory reason, for if it did, the rule of *Batson* was violated.' That court held that a number of specified circumstances were sufficient to establish a prima facie case of purposeful discrimination in selection of the petit jury, and the case was remanded to the trial court, as the factfinder, for an evidentiary hearing consistent with *Batson.* We do not read *Powell* to mean that the factfinder cannot *consider* the fact of the number of blacks on the jury, along with all other 'relevant circumstances.'

Rather, we understand it to mean, when read along with that portion of *Batson* quoted hereinabove, that that fact alone does not automatically outweigh other relevant circumstances which would raise an inference of unlawful discrimination. Our interpretation is bolstered by the recent holding in *United States v. Dennis*, 804 F2d 1208, 1211 (11th Cir. 1986), cert. denied, involving similar factual circumstances, that '(i)t is . . . obvious that the government did not attempt to exclude all blacks, or as many blacks as it could, from the jury. Moreover, the unchallenged presence of two blacks on the jury undercuts any inference of impermissible discrimination that might be argued to arise from the fact that the prosecutor used three of the four peremptory challenges he exercised to strike blacks. . . . We thus conclude that all of the relevant facts and circumstances do not raise an inference of purposeful discrimination on the basis of race, and that appellants were not entitled to any inquiry into the prosecutor's reasons for exercising his peremptory challenges as he did.' We thus likewise conclude that the trial court did not err in holding that no prima facie case for unlawful discrimination was made here." (Emphasis in original.) *Mincey v. State*, supra at 503-504.

In this case, as in *Mincey*, there appears to be some confusion as to how many strikes the State may have used to remove blacks. However, in *Mincey*, there was even a dispute as to how many blacks actually served on the jury. In the case at bar, it is clear that 7 out of the 12 jurors were black. However, it would certainly be a mischaracterization of the trial court's ruling in this case to imply that the number of black jurors was the *only* factor which was considered by the trial court in its ruling that appellant had failed to show a prima facie case. As noted previously, it was only after extensive colloquy with counsel concerning the *Batson* motion in this case, that the trial court held: "The motion will be denied based on the Court's observation of the Jury, the makeup of the jury, [and] the responses on voir dire that were made pursuant to questions asked by both sides." Thus, as in *Mincey*, the trial court in this case has made a finding that, based upon the relevant circumstances — which included but were *not* limited to the number of blacks who actually served as jurors — there was no prima facie case for unlawful racial discrimination and that finding is adequately supported by the record.

Therefore, unlike *Powell*, this is not a case wherein the record shows that the defendant *did* meet his initial burden of proving a prima facie case and wherein the State then urged that the number of blacks who actually served on the jury is, standing alone, a factor sufficient automatically to outweigh all of the other circumstances which had raised the initial inference of unlawful discrimination. *Powell* remanded for the trial court to conduct an evidentiary hearing as to the prosecutor's reasons for exercising his peremptory challenges under

such circumstances as gave rise to an inference of discrimination, because that was an issue which the trial court in that case had never addressed. *Powell did not* remand for the trial court to conduct *another* hearing as to whether the defendant had met his initial burden of showing a prima facie case of discrimination, because that was an issue upon which the trial court in *Powell* had already ruled.

No decision of the Supreme Court supports the proposition that, the trial court having already conducted a hearing on appellant's *Batson* motion, this case should be remanded for another hearing. *Aldridge v. State*, 258 Ga. 75 (4) (365 SE2d 111) (1988) makes it clear "that *in the future the defendant in Batson type cases has the burden to complete the record with information revealing the racial composition of the panel from which the jury was selected, the racial breakdown of the strikes of both parties, and the racial composition of the resulting jury.*" (Emphasis supplied.) Thus, assuming that the instant case were within the ambit of *Aldridge*, the absence in the present record of the information specified in *Aldridge* would be a basis for holding that appellant has not met his burden of showing error on the record on appeal, not a basis for remanding for another hearing as to an issue which has already been addressed. In *Williams v. State*, 258 Ga. 80, 81 (3), fn. 2 (365 SE2d 408) (1988), the Supreme Court did "commend and endorse the procedure followed by the trial court, *following its ruling that the defendant had not made a prima facie case of discrimination. . . .*" (Emphasis supplied.) However, commending and endorsing a procedure is not the equivalent of mandating that procedure and, of course, what is ultimately dispositive in this case, as it was in *Williams*, is the initial issue of whether appellant proved a prima facie case, not the subsequent issue of the State's proof of the nondiscriminatory exercise of its peremptory challenges.

*Batson* involves a two-step process and this case involves only the first step, which is whether appellant met his burden of proving a prima facie case of discrimination. There is no contention that appellant was denied the opportunity to prove his prima facie case. Compare *Wright v. State*, supra at 104 (1). If, having once been provided with the opportunity to make his prima facie case, appellant did not then meet his evidentiary burden or he did not perfect the record as to that issue, the responsibility in that regard is his. There is no reason to remand this case for further hearing and another ruling by the trial court because the trial court has already held a sufficient hearing and has made a ruling as to appellant's failure to make a prima facie case under *Batson* which is complete and correct according to the analysis of the Supreme Court in *Mincey*. "Moreover, even if such a prima facie case had been made, a review of the explanations offered by the prosecutor reveals that a race-neutral explanation was given as to all of the potential jurors." *Mincey v. State*, supra at 504 (4). Ac-

cordingly, the trial court properly denied appellant's *Batson* motion and this enumeration of error is without merit.

3. The trial court did not erroneously abridge the right to a thorough and sifting cross-examination when, during the cross-examination of a State's witness, it informed appellant's counsel to "go on to something else." The trial court's directive came only after appellant's counsel had, on numerous previous occasions, asked the same question of the witness and had, on each occasion, received the same answer. See generally *Fluker v. State*, 174 Ga. App. 890, 891 (2) (332 SE2d 34) (1985). Likewise, that the trial court's directive may have occurred in the presence of the jury was not a ground for the declaration of a mistrial. See *Fluker v. State*, supra at 891 (2).

4. The trial court conducted a *Jackson-Denno* hearing and determined that an in-custody statement given by appellant would be admissible into evidence. This ruling is enumerated as error. We have reviewed the transcript of the hearing and find that the trial court correctly held that the statement was admissible into evidence. The State made a prima facie showing of admissibility. "[A] prima facie showing of the admissibility of [an inculpatory statement is] made by evidence of compliance with OCGA § 24-3-50 in addition to evidence showing that [the] defendant [made his inculpatory statement] after having been given his *Miranda* rights." *Pruitt v. State*, 176 Ga. App. 317, 321 (3) (335 SE2d 724) (1985). Appellant offered nothing which conflicted with the State's prima facie showing.

5. The trial court's failure to give numerous of appellant's written requests to charge is enumerated as error. "The charge is to be considered as a whole, and where the charge covers the subject matter of the request, it is not error although not in the exact language of the request. [Cits.]" *Stevens v. State*, 247 Ga. 698, 704 (8) (278 SE2d 398) (1981). A review of the actual charge given by the trial court shows that it adequately addressed the legal principles which were contained in appellant's refused requests and, in so doing, the trial court's charge employed less argumentative language than that which had been used in appellant's requests. There was no error.

*Judgment affirmed. Birdsong, C. J., Deen, P. J., Sognier, Pope and Beasley, JJ., concur. McMurray, P. J., Banke, P. J., and Benham, J., dissent.*

BENHAM, Judge, dissenting.

Although I concur with Divisions 1, 3, 4, and 5 of the majority opinion, I cannot concur with the holdings in Division 2, so I must dissent to that division and to the judgment.

The essence of the majority's position is that appellant failed to establish a prima facie case of racial discrimination in the use of peremptory strikes by the State and that, even if he had, the State

made a sufficient explanation of its use of peremptory strikes to remove black jurors from the jury. I must disagree with both holdings.

*Aldridge v. State*, 258 Ga. 75 (4) (365 SE2d 111) (1988), cited by the majority, established the burden a defendant in future *Batson* cases must bear. The obvious import of the establishment of that standard is that the defendant's burden had not been clearly established until the day *Aldridge* was decided. That being so, this Court cannot properly hold that appellant has failed to meet his burden because he did not make the showing required by *Aldridge*. It is clear from the record that the trial court and the prosecuting attorney had no clearer idea of the standards to be applied in *Batson* claims than appellant did. The record makes it clear, notwithstanding the trial court's recitation of the factors considered, that the holding that appellant did not make a prima facie case was based on nothing more than a count of the jury and the trial court's memory that there was a federal case holding that the presence of any blacks on the jury defeats a *Batson* claim. This case, therefore, is one in which the trial court, contrary to the Supreme Court's requirement in *Mincey v. State*, 257 Ga. 500 (4) (360 SE2d 578) (1987), that more factors be considered than just the number of blacks on the jury, considered only that factor. Although the presence of blacks on the jury as chosen undercuts any inference of impermissible discrimination arising from the use of peremptory strikes to remove blacks from the jury, that presence does not, by itself, destroy the inference. My review of the record leads me to the conclusion that the trial judge in this case made his determination that no prima facie case had been established on the basis of insufficient information, and that the hearing on the issue was insufficiently full and complete to permit an adequate showing. It is for that reason that I would return this case to the trial court for a new hearing on the issue of appellant's *Batson* claim.

Second, I cannot agree that the prosecuting attorney in this case provided race-neutral explanations of his use of peremptory strikes that would permit an appellate review of the issue. The prosecuting attorney made the general statement that the blacks who were struck from the jury were those who knew appellant or his family or knew of appellant or his family. I do not believe such a broad-brush approach is adequate. Compare *Hillman v. State*, 184 Ga. App. 712 (1) (362 SE2d 417) (1987). See also *Powell v. State*, 182 Ga. App. 123 (3) (355 SE2d 72) (1987).

My position in this case must not be misunderstood as criticism of the trial court's handling of the *Batson* claim. This case was tried in February 1987, and guidance for the trial courts on these issues was sparse. It is clear to me from the transcript that the trial court attempted to comply with the U. S. Supreme Court's mandate, but had not been provided sufficient guidelines for doing so. In the inter-

vening months, the relative burdens and responsibilities have been clarified significantly. It is with confidence, then, that I would remand this case to the trial court for a complete hearing on appellant's *Batson* claim.

For the reasons stated, I must dissent to the holdings in Division 2 of the majority opinion and to the judgment.

DECIDED MARCH 18, 1988 —
REHEARING DENIED MARCH 30, 1988 —

*Alfred D. Fears, William P. Bartles, Alfred D. Fears, Jr.*, for appellant.

*E. Byron Smith, District Attorney, Tommy K. Floyd, Assistant District Attorney*, for appellee.