Terry Mathews was convicted for the unlawful possession of phenobarbital and was sentenced to four years' imprisonment. Two issues are raised on this appeal from that conviction.
 I
Mathews argues that the prosecutor's use of peremptory strikes in selecting a jury violated his constitutional rights under *Page 1130 Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986). This case was tried after Batson
but before Ex parte Branch, 526 So.2d 609 (Ala. 1987).
Immediately after the jury had been selected, the parties retired to the judge's chambers, where defense counsel requested a mistrial. "Judge, based on the Batson v.Kentucky decision and related cases I would move for a mistrial on the grounds that the State has systematically excluded those of the defendant's race from this jury panel. Out of seven strikes exercised by the State, the State exercised five of their seven strikes to eliminate members of the defendant's race."
Without any further showing, the trial judge then requested the prosecutor to state her reasons for striking the five black venire persons. Those reasons were:
 1. Mrs. Roy — single and admitted to having been given drugs by a friend for an ailment which was a possible defense in this case.
2. Sylvia King — single, young.
 3. Mrs. Smith — single and a friend had given her drugs for an ailment.
4. Mrs. Stewart — single.
 5. Mr. Nichols — elderly, retired, "didn't seem very attentive during the selection, . . . seemed to have trouble hearing and understanding what was going on." The trial judge "concurred" with the prosecutor's observation.
In explaining the reasons for these five strikes, the prosecutor repeatedly stated that her practice was to strike young and single people: "[M]y pattern in almost every trial that I try [is] to strike all single people. * * * "[Y]oung single people in my opinion do not make good State jurors. They tend to be overly sympathetic, especially concerning the use of narcotics. * * * "As with Miss King [black], and with Mr. Shreck [apparently a white venire-member], all single, young, sympathetic toward defendants, especially in cases involving narcotics."
The trial judge found that "sufficient grounds were given to them so it was not obvious to the Court that they were struck on the basis of race." Within the context of the specific facts of this case, we agree. Lockett v.State, 517 So.2d 1346, 1352 (Miss. 1987), cert. denied,Lockett v. Mississippi, ___ U.S. ___,108 S.Ct. 2858, 101 L.Ed.2d 895 (1988).
In Hillman v. State, 184 Ga. App. 712,362 S.E.2d 417 (1987), the accused was a 43-year-old black man who allegedly had been drinking when he committed the acts for which he was arrested. The prosecutor used all of his nine peremptory strikes to remove blacks from the prospective jury. He stated that considerations of age, rather than of race had motivated his strikes. He explained that he was "trying to get an older jury. His theory was that a more mature jury would be less prone to consume drugs or alcohol, or to act irresponsibly when they did consume such substances." 184 Ga. App. at 712, 362 S.E.2d at 418. The Georgia Court of Appeals held the reasons race-neutral and "adequate in light of Batson standards." Id. See also People v. Gregory ZZ, 134 A.D.2d 814,521 N.Y.S.2d 873 (N.Y.App. Div. 1987), appeal denied, Peoplev. ZZ, 71 N.Y.2d 905, 523 N.E.2d 321, 527 N.Y.S.2d 1014
(N.Y. 1988) (prosecutor in case of rape of a sixteen-year-old girl wanted jurors who fit a certain "profile," adults with children near the victim's age); Garza v. State,739 S.W.2d 374, 375 (Tex.Ct.App. 1987) (prosecutor desired "a more mature panel").
However, "while we find that in this case the reasons are racially neutral, our opinion should not be construed . . . to hold these reasons to be automatically race-neutral in any other case." Lockett, 517 So.2d at 1352. Here, it appears that the state "challenged non-black jurors with the same or similar characteristics as the black jurors who were struck." Branch, 526 So.2d at 623.
In reaching this conclusion, we note that the record does not show how many blacks were on the jury venire or how many blacks, if any, served on the jury. Although a motion for new trial was filed, it contained no ground asserting aBatson or related issue. *Page 1131 
At trial, defense counsel also argued that young adults constituted a distinctive class and that the prosecutor had employed her peremptory challenges to systematically exclude that class. This issue has not been pursued on appeal and we consider it to have been abandoned. See Hamling v. UnitedStates, 418 U.S. 87, 138, 94 S.Ct. 2887, 2917,41 L.Ed.2d 590 (1974) ("Petitioners do not cite case authority for the proposition that the young are an identifiable group entitled to a group-based protection . . .; claims of exclusion of the young from juries have met with little success in the federal courts."); Rutledge v. State,482 So.2d 1250, 1255 (Ala.Cr.App. 1983), reversed on other grounds, Ex parte Rutledge, 482 So.2d 1262 (Ala. 1984) ("Age has been held not to be a valid criterion in determining whether an 'identifiable' or 'distinctive' group, for purposes of a jury system reflecting a fair cross-section of the community has been excluded").
 II
Mathews was properly arrested and searched.
At approximately 1:30 on the afternoon of July 17, 1986, in downtown Birmingham, Jimmy Lee NeSmith identified Mathews and told Birmingham Police Officer Donald William Toole that Mathews and another individual had robbed him at gunpoint at 6:30 that morning. Officer Toole went after Mathews and received a radio dispatch containing similar information.
The officer stopped Mathews and informed him that he was under arrest for robbery. Mathews was handcuffed and then searched. In his pocket was found an amber plastic bottle containing thirty-two tablets composed of the drug phenobarbital. Both the victim NeSmith and Mathews were taken to the police department. Later, the district attorney's office "refused to recommend a robbery warrant" because there was some question about NeSmith's sobriety.
"An officer may arrest any person without a warrant . . . (4) When he has reasonable cause to believe that the person arrested has committed a felony, although it may afterwards appear that a felony had not in fact been committed." Ala. Code 1975, § 15-10-3.
Here, Officer Toole had probable cause to arrest Mathews.McCants v. State, 459 So.2d 992, 994 (Ala.Cr.App. 1984); Campbell v. State, 354 So.2d 325, 327
(Ala.Cr.App. 1977); Turk v. State, 53 Ala. App. 106,110, 298 So.2d 37 (1974).
In Terry v. Ohio, 392 U.S. 1, 25-26,88 S.Ct. 1868, 1882, 20 L.Ed.2d 889 (1968), the United States Supreme Court stressed the "distinction in purpose, character, and extent between a search incident to an arrest and a limited search for weapons." A search incident to arrest can "involve a relatively extensive exploration of the person. A search for weapons in the absence of probable cause to arrest, however, . . . must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." Terry, 392 U.S. at 25-26,88 S.Ct. at 1882. See 3 W. LaFave, Search andSeizure, § 9.4 (2d ed. 1987).
 "If, then, under the Terry rule 'an officer may not remove an object from the suspect's pockets unless he has reason to believe it to be a dangerous weapon,' that limitation is unduly strict in the case of a weapons search incident to arrest. Rather, it would seem that an object not clearly identifiable as something other than a 'small hidden weapon' must be amenable to further inspection. And if the object is a container which might have some kind of weapon within it, it seems reasonable that the officer should look inside of that object, as the Supreme Court appears to have decided in Peters v. New York [392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968)]. The alternative, requiring the officer to retain all such objects without inspecting them, is less than practicable." 2 LaFave § 5.2(d) at 455.
"[I]n the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." *Page 1132 United States v. Robinson, 414 U.S. 218, 235,94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973). See also Gustafsonv. Florida, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456
(1973); 2 LaFave at § 5.2(a).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.