Henry Thomas, Jr., was indicted for attempted murder. The jury found the appellant "guilty as charged in the indictment" and the trial judge sentenced the appellant to 25 years' imprisonment in the penitentiary.
 I
The following occurred during the prosecutor's closing argument:
 "MS. PULLIAM: And Mr. Caldwell hasn't put on any evidence whatsoever — not under a duty to put on any evidence, but he certainly got up here and told you a lot of things he believed the evidence in the case was going to be. And that is what I wanted to get across. That is what I want you to recall and really think about, what came in to you, what came in front of you as legal evidence and what came from Mr. Caldwell's mouth.
 "I'll tell you what he told you, I don't know if you remember —
 "MR. CALDWELL: Judge, we are going to object, the defendant has a right not to testify in this case and he knows it. He elected not to testify.
"MS. PULLIAM: I am talking about you, Mr. Caldwell.
"MR. CALDWELL: I would object.
 "THE COURT: Yes, sir, I understand that and I will so charge the jury about it." (R. 269-70.)
The appellant contends that the prosecutor's argument was an improper comment on his failure to testify and that the trial judge should have declared a mistrial. This issue is not properly before this court because there is no adverse ruling for this court to review. See Britain v. State, 533 So.2d 684
(Ala.Crim.App.), cert. denied *Page 321 
(Ala. 1988); Hammond v. State, 502 So.2d 843 (Ala.Crim.App. 1986), cert. denied (Ala. 1987). Furthermore, we do not find that the prosecutor's argument was a comment on the appellant's failure to testify. See Thompson v. State, 527 So.2d 777
(Ala.Crim.App. 1988); United States v. Nabors, 762 F.2d 642 (8th Cir. 1985). We must also note that the trial judge, in his oral charge to the jury, stated:
 "Of course, Mr. Thomas does not have to take the stand, as Mr. Caldwell stated when Ms. Pulliam was talking with you. He doesn't have to testify. The Constitution of the United States and the Alabama State Constitution give the defendant in a criminal division a personal election. If he elects not to testify, then that is not fair for the jurors to infer a negative thing about one's failure to get on the witness stand." (R. 277.)
This issue is without merit.
 II
The appellant contends that the prosecutor violated the principles set out in Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), by using three of her peremptory strikes to exclude black males from the jury. The following occurred during the hearing on the appellant's Batson
motion:
 "MR. CALDWELL: The District Attorney in this case has systematically struck all black males in this case. And I would like to make a Batson motion that she systematically excluded them, preserving the record.
"THE COURT: There were four black —
"MS. PULLIAM: There were five.
 "MR. CALDWELL: One was challenged for cause, said she knew the family and said she wouldn't be fair in the case and would feel embarrassed to be on the case.
 "THE COURT: And the other strike was a black female for cause?
"MR. CALDWELL: Black male —
 "THE COURT: Black male and black female that we struck for cause on your motion. Four blacks are left — four black males and two black females on the jury —
 "MS. PULLIAM: On the jury now, one married black male and two black females.
 "THE COURT: I can't find there was systematic exclusion.
 "MS. PULLIAM: I struck three out of five black males on the jury. For the record, I struck number 109, 204, and 163. Those three numbers, all who were single black males.
 "Specifically, as to number 109, whose name was Vernon Kater, the Court and the defense both will recall when he was first called it appeared to me that he had forgotten what his name was and laughed. And I had visual eye contact with him a great deal during the course of the proceedings and he did not appear to be very serious about the case at all. He even smiled at one point when I was stating what the injuries were.
 "The occupation that he gave was Bruno's, which is the same occupation that Mr. Anson Watson, number 204, who again is a single black male, also gave. I have no idea whether they know each other, but I didn't want to take the chance. But, the primary reason for striking 204 and 109 and 163, single, unemployed black males, was that my — my objection was to get every single person, with the exception of women, off the jury, which I believe I have.
 "I also struck number 4, number 195 and number 184, all of whom answered to being single.
"THE COURT: Unmarried people?
 "MS. PULLIAM: That's right. Every one of my strikes were men. I do not want single people on the jury. Family people and men who are married and hopefully have kids.
 "THE COURT: I find that your motion is ill-taken, that there has been no showing of systematic exclusion to any black person on the venire. But, your motion is down subject to review." (R. 8-11.)
In order to establish a prima facie case of purposeful discrimination based on the *Page 322 
use of peremptory challenges, the United States Supreme Court in Batson stated:
 "[T]he defendant first must show that he is a member of a cognizable racial group, Castaneda v. Partida, supra, 430 U.S. [482], at 494, 97 S.Ct. [1272], at 1280 [51 L.Ed.2d 498 (1977)], and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate' Avery v. Georgia, 345 U.S. [559], at 562, 73 S.Ct. [891], at 892 [97 L.Ed. 1244 (1953)]. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination."
Batson, 476 U.S., at 96, 106 S.Ct., at 1723.
"Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors." Batson, 476 U.S., at 97,106 S.Ct., at 1723.
It appears that there were eight blacks on the jury venire. Five of these potential jurors were male and three were female. One of the black males and one of the black females were struck for cause. The prosecutor used three of her peremptory strikes to remove three of the remaining four black males from the venire. A black male and two black females served on the jury.
Initially, we note that we are not convinced that the defendant established a prima facie case of purposeful discrimination. See United States v. Dennis, 804 F.2d 1208
(11th Cir. 1986) ("black males," as opposed to blacks generally, do not constitute cognizable racial group for the purpose of making out a prima facie case of purposeful discrimination). However, since the prosecutor's reasons for striking these three black males are on the record, we shall review the sufficiency of her explanations. Currin v. State,535 So.2d 221 (Ala.Crim.App. 1988); Williams v. State,548 So.2d 501 (Ala.Crim.App. 1988).
The prosecutor in this case stated that her primary reason for striking these potential jurors was because they were single. In Matthews v. State, 534 So.2d 1129 (Ala.Crim.App.),cert. denied (Ala. 1988), the prosecutor struck several potential black jurors because they were single. In Matthews, we stated that the reason given by the prosecutor would not automatically be a race-neutral reason in any given case, but we found this reason to be race-neutral because non-black jurors were also struck because they were single.
The prosecutor in the case at bar also struck other non-black jurors because they were single. Furthermore, it is apparent from the record that the prosecutor's reason for striking these three black males (she did not want single people on the jury) is particularly related to the facts of this case. The appellant was charged with and convicted of the attempted murder of his girl friend. Prior to this incident, the appellant and his two children lived with the victim and her two children. At some point, the victim asked the appellant to move out, which he did, but the victim had allowed him to move back in. In the week prior to this incident, the victim had told the appellant that she wanted to end their relationship. Under the particular facts of this case, it can be seen that a single male might be sympathetic to the appellant in this case. Thus, we find that the prosecutor's reason for striking the three black males in this case was sufficiently race-neutral.
For the reasons stated above, the judgment of the trial court is affirmed.
AFFIRMED.
All the Judges concur. *Page 323