## S91A0356. JOHNSON v. THE STATE.
### (404 SE2d 108)

HUNT, Justice.

Andrew Johnson, Jr., was convicted of the felony murder of his girl friend, Keisha Alon Evans, on February 12, 1990, in Richmond County.[1] He appeals raising the sufficiency of the evidence, that his custodial statement should have been suppressed; that the state did not prove a causal connection between his acts and the victim's death; that the trial court erred in failing to grant a mistrial after the prosecutor commented on his failure to testify, and that the trial court's charge on involuntary manslaughter was erroneous. We affirm.

After a relationship of several years during which Johnson and the victim had a child, the victim broke off with Johnson when she discovered he was seeing other women. In an effort to reconcile their differences, Johnson visited the victim during the early hours of the morning on February 12, 1990. The victim's mother heard him say: "Someone has got to die tonight."

The pair quarreled and Johnson left; later, as the victim crossed the street to visit a friend, he pulled her into his car and drove to Bayvale Park. They sat in the car and argued, then moved to some bleachers. In his tape-recorded custodial statement, Johnson admitted slapping, but not hitting, the victim about ten times, but said the severe bruises on her right forehead and the left side of her face were caused when the victim fell off the bleachers or hit her head on a fence. He then described dragging her to his car and taking her to the hospital when she became unresponsive. At the Medical College of Georgia, he put the victim into a wheelchair and brought her into the emergency room, where he reported that he did not know who she was and had found her comatose in the park. Under the pretense of moving his car, he abandoned her.

Although the victim was initially put on life-support systems, she was declared brain dead, the systems were removed, and she died later that day. The victim's mother identified Johnson as the proba-

---

[1] The victim died on February 12, 1990, and the defendant was indicted on March 13. He was tried and convicted on June 25-26 and sentenced to life in prison. He filed a motion for new trial on June 29, the court reporter certified the transcript on August 29, and the motion was denied on November 8, 1990. The defendant filed his notice of appeal on November 12; the case was docketed in this court on December 14 and submitted for decision on January 25, 1991.

ble assailant, and he was arrested. He was indicted for malice murder and felony murder, with aggravated assault the underlying felony. The jury was also charged on voluntary, and both levels of involuntary manslaughter, but found him guilty of felony murder.

1. Having reviewed the evidence in the light most favorable to the jury's determination, we conclude that a rational trier of fact could have found Johnson guilty of felony murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Crawford v. State*, 245 Ga. 89, 90 (263 SE2d 131) (1980).

2. In his first enumeration of error, Johnson argues the trial court erred in allowing his tape-recorded custodial statement into evidence. He claims the state failed to comply with the requisites of OCGA § 17-7-210 by giving him an inadequate summary ten days before trial and then surprising him with a transcript of his taped statement the day of the trial.

OCGA § 17-7-210 provides in pertinent part:

> (d) If the defendant's statement is oral, no relevant and material (incriminating or inculpatory) portion of the statement of the defendant may be used against the defendant unless it has been previously furnished to the defendant, if a timely written request for a copy of the statement has been made by the defendant.

Johnson contends the statement should have been suppressed under this Code section.

At trial, he specified two material omissions from the summary that appear on the taped transcript: (1) the summary does not specify the number of blows or the duration of the argument, and (2) the summary does not reflect the defendant admitted having hit the victim on prior occasions. The trial court agreed with him about the references to prior incidents and those statements were removed from the tape and from the transcript.

But, the trial court held the summary was not materially different from the transcript concerning the number and duration of the blows. On the transcript, in answer to the question, "How many times do you think you hit her?," Johnson specifically stated, "I say about 10 times." The summary reports:

> They started arguing again inside his vehicle, after which he hit KEISHA in the head and face. He stated that they exited the vehicle and continued arguing. He hit KEISHA several more times in the head and face. He stated that he only slapped her and did not hit her with his fist.

As we pointed out in *White v. State*, 253 Ga. 106, 109 (317 SE2d

196) (1984), "[t]he purpose of the statute is to inform the defendant 'in writing of all relevant and material portions of his own statement that the state may rely upon to his disadvantage.'" The summary was timely produced and clearly notifies Johnson of the substance of the taped transcript, as edited by the trial court and admitted at trial. While the summary omits the exact number of blows, it shows that the defendant hit the victim a number of times over an extended period of time. We find no error. *Van Kleeck v. State*, 250 Ga. 551, 552 (299 SE2d 735) (1983); *Rhodes v. State*, 170 Ga. App. 473, 476 (317 SE2d 285) (1984).

3. Johnson insists he was entitled to a directed verdict of acquittal.

(a) There is no merit to his complaint that the medical evidence did not establish a causal connection between his actions and the victim's death. Viewed in the light most favorable to the verdict, the pathologist's testimony revealed that the victim was badly beaten about the head; that blows to the face would be sufficient to cause the injuries he observed; that while the external injuries, themselves, would not ordinarily be life threatening, they, and the rotation of the victim's head as she was hit, could have caused the subdural bleeding which in turn caused the victim's death. The autopsy revealed that the locations of two of the three areas of hemorrhaging were closely related to the external bruises. Johnson, in his statement, claimed the injuries were caused when the victim fell from the bleachers or into a fence. A jury was authorized to find that Johnson caused injury to the victim which directly or materially contributed to the existence of a subsequently accruing, immediate cause of death. *Ward v. State*, 238 Ga. 367 (233 SE2d 175) (1977); *James v. State*, 250 Ga. 655, 656 (300 SE2d 492) (1983).

(b) Johnson also contends that acquittal was mandated because the state failed to exclude beyond a reasonable doubt the possibility that death may have resulted from the improper removal of life-support systems rather than from injuries caused by him. According to Johnson, because the medical decision to disconnect life-support systems must, under the law, be made independently by two physicians, the state's presentation of the testimony of only one doctor leaves the cause of death unanswered. This argument assumes that the question of whether removing the support systems met procedural requirements is an issue in this case, which it clearly is not.[2] The treating doctor's testimony established that the victim was legally dead before the systems were removed and that her death was caused by the sub-

---

[2] As defense counsel stated "Doctor, I am not going to suggest that you caused [the victim's] death."

dural hematomas. Moreover, Johnson offered no objection to the treating doctor's testimony that a second doctor had, in fact, conducted an independent examination and declared the victim brain-dead before the systems were disconnected.[3]

The trial court did not err in denying Johnson's motion for acquittal.

4. Johnson complains the prosecutor improperly commented on his failure to testify. In his closing argument, the prosecutor said:

> The judge is probably going to charge you something to the effect that if there is evidence in the case of an abandoned and malignant heart — and if you look at that gentleman over there with those earrings in his ear, that the lady in the emergency room at M.C.G. so well remembered about the man who dropped her off, you will see an abandoned and malignant heart. He's not sorry, he hasn't shown a bit of remorse, he doesn't care. He did what he planned to do, and that was kill her, and there has never been any indication by any expression, or anything else — you've seen the bland face — and you're entitled to look at me, and Mr. Johnson, and other people in the courtroom.

Johnson objected and, when the trial court offered curative instructions on the defendant's right not to testify, demanded a mistrial, which the trial court denied.[4]

Under the standards set out in *Ranger v. State*, 249 Ga. 315, 319 (290 SE2d 63) (1982), we do not agree that the prosecutor's manifest intention was to comment on the defendant's failure to testify, nor do we agree that the jury would naturally and necessarily have construed the prosecutor's argument as a comment on the defendant's failure to testify. We rejected a similar complaint in *Lobdell v. State*, 256 Ga. 769, 775 (353 SE2d 799) (1987), and more recently in *Christenson v. State*, 261 Ga. 80 (402 SE2d 41) (1991).

5. We agree with Johnson that the trial court should not have designated one form of involuntary manslaughter as "felony" and the other as "misdemeanor." *Cater v. State*, 176 Ga. App. 388 (336 SE2d 314) (1985). Johnson's argument assumes the jury would then know which of the two levels of involuntary manslaughter was the more se-

---

[3] The doctor testified that two physicians must, and did, examine and independently determine that the victim was already legally dead in order to remove the support systems, as required by the institutional policy of the Medical College of Georgia. OCGA § 31-32-2, cited by the defendant, contains a similar requirement for "living will" cases, where the patient is "terminal" within the meaning of that statute.

[4] The trial court recharged this point during its charge to the jury at the close of the trial. See *Stapleton v. State*, 235 Ga. 513 (2) (220 SE2d 269) (1975).

rious and would convict him of the greater offense, if it were to convict him of either. In *Cater*, for example, the trial court referred to simple battery as a misdemeanor but made no reference to aggravated assault as a felony. Cater was, in fact, convicted of aggravated assault.[5] A review of the charge as a whole in this case shows that the involuntary manslaughter charges were among charges on malice murder, felony murder, and voluntary manslaughter. No error has been asserted as to the correctness of either of those charges. Johnson was convicted of felony murder only. Any error connected with the improper rating of the two types of involuntary manslaughter could only be harmless.

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 10, 1991.

*Peter D. Johnson,* for appellant.
*Michael C. Eubanks, District Attorney, Michael J. Bowers, Attorney General, Thomas A. Cox, Jr.,* for appellee.

---

[5] Cater's argument was rejected by the Court of Appeals because, as it correctly pointed out, it is obvious to all that simple battery is a less serious offense than aggravated assault.