191 N.J. Super. 464 (1983)
467 A.2d 590
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CHRISTOPHER WATSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 28, 1983.
Decided October 19, 1983.
*465 Before Judges J.H. COLEMAN, GAULKIN and BACHMAN, J.S.C., temporarily assigned.
Joseph H. Rodriguez, Public Defender, for appellant (Robert L. Brown, Designated Counsel, on the brief).
Irwin I. Kimmelman, Attorney General, for respondent (Mark H. Feingold, Deputy Attorney General, on the brief).
The opinion of the court was delivered by GAULKIN, J.A.D.
A jury convicted defendant of first-degree robbery, N.J.S.A. 2C:15-1, and murder N.J.S.A. 2C:11-3. On this appeal defendant first urges that his motion for judgment of acquittal should have been granted because his acts "were not the proximate cause of the death of the decedent," that "the actions of the decedent's family and the physician were the supervening cause of death" and that "the decision to terminate the life of the victim herein was improper and illegal." These contentions were not advanced in the trial court.
The record shows that the victim left Cooper Hospital in Camden on the evening of February 20, 1981 after visiting a friend. As he was unlocking the door of his car parked on a nearby street, he was attacked by defendant and defendant's accomplices and was struck on the back of the head. He fell to the pavement where he lay bleeding while defendant removed his wallet and watch. Passersby called the police, who immediately removed the victim to Cooper Hospital, where he was admitted to the intensive care unit. Upon admission he was comatose, with both pupils dilated and fixed, without spontaneous respiration and with few reflexes. The admitting doctor *466 testified that those signs "indicated that the brain was inactive." The victim was intubated and a respirator was attached.
A CAT scan showed massive contusions of the brain and a "small operation" was done to "put a monitor on his brain." Nevertheless, within a few hours the victim "showed a clinical picture which was consistent with brain death, there were no reflexes, no spontaneous activity, nothing."
The victim's condition was closely monitored and "absolutely no change" was noted. On February 23 and 24, brain-wave tests showed "no electrical activity," which the doctor described as meaning that "the brain has reached a point of not being able to be reversed to a functional level." On February 24 the doctors discussed the victim's condition with the family and "made them aware that we had reached a point of no return." In agreement with the family the respirator was stopped and the victim expired within a few minutes.
In this setting, the contention that defendant is not criminally responsible for the death of the victim is patently without merit. The "brain death" suffered by the victim was death in fact and could have been so declared before the respirator was turned off. See In re Quinlan, 70 N.J. 10, 28 cert. den. sub nom. Garger v. New Jersey, 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976). See also In re Conroy, 190 N.J. Super. 453, 466 (App.Div. 1983). The death resulted not from turning off the respirator, but from defendant's acts, which undeniably caused the victim's brain to die. Having caused "brain death," defendant was properly found criminally responsible for homicide. See State v. Fierro, 124 Ariz. 182, 603 P.2d 74 (1979); People v. Mitchell, 132 Cal. App.3d 389, 183 Cal. Rptr. 166 (1982); Swafford v. State, 421 N.E.2d 596 (Ind. 1981); State v. Inger, 292 N.W.2d 119 (Iowa 1980); State v. Shaffer, 223 Kan. 244, 574 P.2d 205 (1977); Commonwealth v. Golston, 373 Mass. 249, 366 N.E.2d 744 (1977), cert. den. 434 U.S. 1039, 98 S.Ct. 777, 54 L.Ed.2d 788 (1978); People v. Vanderford, 77 Mich. App. 370, 258 N.W.2d 502 (1977); State v. Meints, 212 Neb. 410, 322 N.W.2d 809 (1982); State v. *467 Johnson, 56 Ohio St.2d 35, 381 N.E.2d 637 (1978); Cranmore v. State, 85 Wis.2d 722, 271 N.W.2d 402 (1978).
Defendant further contends that "the prosecutor was allowed to introduce improper, unfair and highly prejudicial evidence before the jury with regard to alleged past criminal conduct of the defendant," that his constitutional right to remain silent "was violated by the misconduct of the prosecutor," that the prosecutor "exceeded the bounds of propriety in his summation" and that trial counsel was ineffective. Our review of the record satisfies us that each of these contentions is clearly without merit. R. 2:11-3(e)(2).
The judgment of conviction is affirmed.