746 A.2d 557 (1998)
328 N.J. Super. 631
STATE of New Jersey, Plaintiff,
v.
Sonney PELHAM, Defendant.
Superior Court of New Jersey, Law Division (Criminal), Middlesex County.
Decided April 17, 1998.
*558 Nicholas Sewitch, Assistant Prosecutor, for plaintiff (Glenn Berman, Middlesex County Prosecutor, Attorney).
Peter Ventrice, Metuchen, for defendant (Brause, Brause & Ventrice).
HOFFMAN, J.S.C.
This case presents the court with a unique issue in connection with a motion to dismiss an indictment charging defendant, Sonney Pelham, with one count of aggravated manslaughter, contrary to N.J.S.A. 2C:11-4a. The specific issue is whether the removal of life support from a victim who was not brain dead is an intervening cause sufficient to insulate defendant from liability for aggravated manslaughter.
The decision of whether to dismiss an indictment lies within the sole discretion of the trial court. State v. New Jersey Trade Waste Ass'n, 96 N.J. 8, 18, 472 A.2d 1050 (1984). It is well settled that indictments are presumed valid and should only be dismissed on the "clearest and plainest grounds." New Jersey Trade Waste Ass'n, supra, at 18-19, 472 A.2d 1050; see State v. Weleck, 10 N.J. 355, 364, 91 A.2d 751 (1952). An indictment that alleges all of the essential facts of the crime is deemed sufficiently stated, as long as there is at least some evidence as to each element of the State's prima facie case. See New Jersey Trade Waste Ass'n, supra, at 19, 472 A.2d 1050; State v. Schenkolewski, 301 N.J.Super. 115, 137, 693 A.2d 1173 (App.Div.1997), certif. denied, 151 N.J. 77, 697 A.2d 549 (1997); State v. Scherzer, 301 N.J.Super. 363, 428, 694 A.2d 196 (App.Div.1997), certif. denied, 151 N.J. 466, 700 A.2d 878 (1997). *559 In determining the sufficiency of the evidence to sustain the indictment, the State must be given the benefit of all legitimate inferences. New Jersey Trade Waste Ass'n, supra, at 27, 472 A.2d 1050.

I

STATEMENT OF FACTS
The State alleges that on December 29, 1995, at approximately 11:42 p.m., defendant was operating his vehicle on Route 1 North in South Brunswick with a blood alcohol level of 0.19 when he rear-ended a vehicle driven by the victim, William Patrick. The force of the impact caused the victim's vehicle to collide with a guardrail and utility pole approximately 150 feet away.
William Patrick was transported to Robert Wood Johnson University Hospital where he was admitted in critical condition with life-threatening injuries. He was treated there from December 30, 1996 through March 13, 1996. As a result of the collision, he suffered pulmonary contusions, a punctured lung, multiple rib fractures, pelvic fractures, a fractured spine, multisystem organ failure, a right parietal subarachnoid hemorrhage, and a possible right subdural hematoma. The victim also suffered paralysis of his lower extremities as well as many complications from these injuries including sepsis and pneumonia. He remained on a ventilator during most of his stay at this hospital. The victim underwent several surgical procedures in an effort to further diagnose and treat his injuries.
On March 13, 1996, William Patrick was transferred to the Kessler Institute For Rehabilitation in a paraplegic condition and ventilator dependent. There he experienced frequent periods of substantial anxiety, as well as frequent episodes of mucus plugging and difficulty breathing while on the ventilator. Although he showed some slight improvement, and was regularly off the ventilator for twelve hours at a time, his overall medical condition continued to deteriorate. He was aware of his situation, and by the middle of March he began to express his desire to be taken off medications and ventilatory support. While at Kessler, he suffered further complications from his injuries, including new episodes of sepsis and pneumonia, a urinary tract infection and pseudomembranous colitis.
By May 28, 1996, after many weeks of occasional discussion about executing Mr. Patrick's "living will," his family expressed the desire to finally execute that will and discontinue life support. Life support, however, was not terminated at this time. On May 29, 1996, he had a particularly bad episode of mucus plugging and difficulty breathing while on the ventilator. As a result of this episode and the large number of other serious medical problems previously noted, he was transferred to acute care at St. Barnabas Medical Center.
When admitted to St. Barnabas Medical Center on May 29, 1996, Mr. Patrick had a diagnosis of respiratory failure, sepsis, renal insufficiency, multi-organ system failure, ventilator dependence, thoracic paraplegia, dementia and paranoia. It was noted that his family had power of attorney and wished to discontinue life support (ventilator). There was an order written not to resuscitate him in any respect. On May 30, 1996, Mr. Patrick was given Morphine to make him more comfortable. At approximately 3:20 p.m., he was taken off of the ventilator (as per his family's wishes and his living will) and placed on a trach collar. He was not brain dead when he was taken off of the ventilator. At 4:00 p.m., he began to rapidly deteriorate. At 5:15 p.m. his heart rhythm was asystolic. Mr. Patrick was pronounced dead at 5:20 pm. on May 30, 1996.
On May 31, 1996, Deputy Middlesex County Medical Examiner, Dr. Sidney C. Kress, performed an autopsy on the body of William Patrick. Dr. Kress determined that the cause of death was sepsis and bronchopneumonia which resulted from *560 multiple injuries sustained in a motor vehicle accident.

II
WHETHER OR NOT THE REMOVAL OF LIFE SUPPORT FROM THE VICTIM WAS AN INTERVENING CAUSE
Defendant now moves to dismiss the indictment charging him with aggravated manslaughter. In support of defendant's motion, he contends that the removal of life support in conjunction with the administering of morphine to the victim constitutes an intervening cause of death which insulates him from liability for aggravated manslaughter. New Jersey case law defines intervening cause as a cause which breaks the original causation. See Hellstern v. Smelowitz, 17 N.J.Super. 366, 372, 86 A.2d 265 (App.Div.1952).
To prove a prima facie case of aggravated manslaughter, the State must set forth some evidence that "the actor recklessly cause[d] death [of another] under circumstances manifesting extreme indifference to human life." N.J.S.A. 2C:11-4a.
In New Jersey, there are no reported decisions on whether the removal of life support from a victim who was not brain dead constitutes a sufficient intervening cause to relieve a defendant from criminal liability. Nevertheless, in State v. Watson, 191 N.J.Super. 464, 467 A.2d 590 (App.Div.1983), certif. denied, 95 N.J. 230, 470 A.2d 443 (1983), a case in which the defendant was accused of murdering the victim, the court addressed the issue of whether removal of life support from a victim who was brain dead constitutes an intervening cause. In Watson, the court held that the victim's "death resulted not from turning off the respirator, but from defendant's acts, which undeniably caused the victim's brain to die." Id. at 466, 467 A.2d 590. Sister states who have been faced with this issue have held similarly. See, e.g., People v. Laraby, 244 A.D.2d 946, 665 N.Y.S.2d 180 (1997), cert. granted, 91 N.Y.2d 894, 669 N.Y.S.2d 8, 691 N.E.2d 1034 (1998); State v. Guess, 44 Conn.App. 790, 692 A.2d 849, 857, cert. granted in part, 242 Conn. 902, 697 A.2d 688 (1997); Spencer v. State, 660 N.E.2d 359, 362 (Ind.App.1996); Felder v. State, 848 S.W.2d 85, 90 (Tex.Cr.App.1992), cert. denied, 510 U.S. 829, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993); State v. Yates, 64 Wash.App. 345, 824 P.2d 519, 523, cert. denied, 119 Wash.2d 1017, 833 P.2d 1390 (1992); Porter v. State, 308 Ark. 137, 823 S.W.2d 846, 850 (1992); Johnson v. State, 261 Ga. 236, 404 S.E.2d 108, 111 (1991); State v. Olson, 435 N.W.2d 530, 534 (Minn.1989) State v. Velarde, 734 P.2d 449, 455-56 (Utah 1986); Commonwealth v. Kostra, 349 Pa.Super. 89, 502 A.2d 1287, 1289-91 (1985); People v. Bonilla, 95 A.D.2d 396, 410-11, 467 N.Y.S.2d 599, 608, 609 (1983), aff'd sub nom, People v. Eulo, 63 N.Y.2d 341, 482 N.Y.S.2d 436, 472 N.E.2d 286 (1984); State v. Meints, 212 Neb. 410, 322 N.W.2d 809 (1982); State v. Fierro, 124 Ariz. 182, 603 P.2d 74, 77 (1979); State v. Johnson, 56 Ohio St.2d 35, 381 N.E.2d 637, 640 (1978); People v. Saldana, 47 Cal.App. 3d 954, 957, 121 Cal. Rptr. 243, 244 (1975).
I find that the issue at hand may and should be decided based upon principles of causation without a discussion of the definition of death. N.J.S.A. 2C:2-3 provides, in pertinent part, as follows:
a. Conduct is the cause of a result when:
(1) It is an antecedent but for which the result in question would not have occurred; and
(2) The relationship between the conduct and result satisfies any additional causal requirements imposed by the code or by the law defining the offense.
c. When the offense requires that the defendant recklessly or criminally negligently cause a particular result, the actual result must be within the risk of which the actor is aware or, in the case of criminal negligence, of which he should be aware, or if not, the actual *561 result must involve the same kind of injury or harm as the probable result and must not be too remote, accidental in its occurrence, or dependent on another's volitional act to have a just bearing on the actor's liability or on the gravity of his offense.
Thus, the statute requires that the State prove that defendant was the "but for" cause of the victim's death and that the injuries the victim suffered were within the risk of which defendant was aware. If the State sets forth some evidence of these two causation requirements, then the indictment must be sustained.
Applying these principles, it is evident that the removal of the life support in the instant matter was not an intervening cause because the removal of the life support did not "break the original causation." A jury could easily find that the original causation of the victim's death was the defendant's actions. Specifically, the victim would not have been placed on life support but for the defendant driving his vehicle while he was intoxicated into the back of Patrick's vehicle. Accordingly, I find that the State has satisfied the "but for" element of causation.
In addition, I find that the State has met its burden in offering some evidence with regard to the second prong of causation. Although Patrick survived for approximately six (6) months after the collision with the aid of life support, a jury reasonably could infer that the injuries he sustained and eventually died from were within the risk of which defendant was aware when he collided into the victim's vehicle on December 29, 1995, while he was intoxicated. Furthermore, a jury also could find that Patrick's death was not too remote and that the removal of the life support was not another's volitional act as contemplated by the statute. I am satisfied that the State has set forth some evidence towards both causation elements. Thus, the removal of life support from the victim who was not brain dead was not a sufficient intervening cause to relieve defendant from criminal liability.
It is significant that other states have dealt with the issue at hand and have come to the same conclusion. Specifically, these courts have held that when defendant's actions set in motion the victim's need for life support, the causal link between the defendant's actions and the victim's death is not broken by the removal or refusal of life support as long as the death was the natural result of the defendant's actions. See, e.g., People v. Caldwell, (1998), 295 Ill.App.3d 172, 229 Ill.Dec. 675, 692 N.E.2d 448; State v. Ruane, 912 S.W.2d 766, 774-77 (Tenn.Cr.App.1995); People v. Funes, 23 Cal.App.4th 1506, 1522, 28 Cal. Rptr.2d 758, 768 (1994); People v. Velez, 159 Misc.2d 38, 43, 602 N.Y.S.2d 758, 761 (1993); People v. Vaughn, 152 Misc.2d 731, 579 N.Y.S.2d 839 (1991); Eby v. State, 702 P.2d 1047, 1049 (Okla.Cr.App.1985); Matter of J.N., 406 A.2d 1275, 1281 (D.C.1979). For the foregoing reasons, defendant's motion to dismiss the indictment on this basis is denied.
It should be noted further that if and when this case comes to trial, the issue of causation will be considered a factual determination to be made by the jury. Rappaport v. Nichols, 31 N.J. 188, 203, 156 A.2d 1 (1959) (stating that causation questions are ones for the jury). An instruction to the jury, however, will be appropriate to the effect that the removal of life support is not a sufficient intervening cause to relieve defendant of criminal liability. See, e.g., State v. Yates, 64 Wash. App. 345, 824 P.2d 519, 523 (1992); State v. Meints, 212 Neb. 410, 322 N.W.2d 809, 814 (1982).

III
WHETHER OR NOT THE STATE ERRED IN NOT PRESENTING CAUSATION EVIDENCE TO THE GRAND JURY
Defendant's final argument is that the indictment must be dismissed because the *562 State failed to present "clearly exculpatory" evidence to the grand jury by not presenting the causation evidence discussed above.
It is well settled that the grand jury serves as an investigative body, which decides whether to commence criminal proceedings against the accused. See State v. Hogan, 144 N.J. 216, 235, 676 A.2d 533 (1996). The prosecutor facilitates the investigation by presenting evidence that establishes a prima facie case that the accused has committed a crime. Hogan, supra, at 236, 676 A.2d 533. In presenting the prima facie case, the prosecutor has a duty to present evidence to the grand jury that directly negates the guilt of the accused and is clearly exculpatory. Hogan, supra, at 236, 676 A.2d 533. Evidence directly negates the guilt of the accused when it "squarely refutes an element of the crime in question." Hogan, supra, at 237, 676 A.2d 533.
In light of my holding that the removal of life support is not a sufficient intervening cause to remove defendant from criminal liability, defendant's argument is without merit. It was not err for the prosecutor to not present this evidence to the grand jury. Accordingly, defendant's motion to dismiss the indictment on this basis is denied.
The State should submit the appropriate order.