801 A.2d 448 (2002)
353 N.J.Super 114
STATE of New Jersey, Plaintiff/Respondent,
v.
Sonney PELHAM, Defendant/Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted April 30, 2002.
Decided July 9, 2002.
*450 Peter A. Garcia, Acting Public Defender, attorney for appellant (Susan Brody, Assistant Deputy Public Defender, of counsel and on the brief).
Peter C. Harvey, Acting Attorney General, attorney for respondent (Lisa Sarnoff Gochman, Deputy Attorney General, of counsel and on the brief).
Before Judges SKILLMAN, WALLACE, JR. and WELLS.
*449 The opinion of the court was delivered by WALLACE, JR., J.A.D.
A Middlesex County grand jury indicted defendant for aggravated manslaughter, N.J.S.A. 2C:11-4a. Tried by a jury, defendant was found guilty of the lesser included offense of second-degree death by auto, N.J.S.A. 2C:11-5. The trial judge imposed a sentence of seven years in prison, with a three-year period of parole ineligibility. Appropriate fines and penalties were also imposed.
On appeal, defendant makes the following arguments in his brief:
POINT I:
BY INSTRUCTING THE JURY THAT THE REMOVAL OF WILLIAM PATRICK'S LIFE SUPPORTS DID NOT CONSTITUTE AN INTERVENING CAUSE, THE COURT DEPRIVED DEFENDANT OF HIS CONSTITUTIONAL RIGHT TO HAVE THE CAUSATION ISSUE DECIDED BY THE JURY.
POINT II:
BY DELIVERING AN OPENING STATEMENT REPLETE WITH PEJORATIVE REFERENCES TO DEFENDANT ALMOST IDENTICAL TO COMMENTS HE HAD MADE IN A PREVIOUS CASE THAT HAD LED TO REVERSAL ON GROUNDS OF PROSECUTORIAL MISCONDUCT, THE PROSECUTOR DELIBERATELY INTERFERED WITH DEFENDANT'S RIGHT TO HAVE HIS CASE DECIDED BY AN IMPARTIAL JURY.
POINT III:
THE THREE-YEAR MANDATORY MINIMUM SENTENCE WAS UNCONSTITUTIONALLY IMPOSED BECAUSE THE FACT OF DEFENDANT'S INTOXICATION WAS NOT DECIDED BY THE JURY. (NOT RAISED BELOW).
We conclude it was error to instruct the jury that the removal of life support from the victim did not constitute an intervening cause, and that this issue must be decided by the jury. We reverse and remand for a new trial.
The facts may be briefly stated. The conviction arose out of an automobile accident which occurred around 11:30 p.m. on December 29, 1995. Defendant was operating his vehicle when he collided with the rear of a vehicle driven by William Patrick. The force of the impact caused Patrick's vehicle to strike a guardrail and utility pole approximately 150 feet away.
Sergeant Mark Heistand and Lieutenant Richard Hutchinson of the South Brunswick Police Department were nearby and heard the crash. They immediately responded to the scene of the accident, secured the area, and requested assistance.
*451 Defendant exited his vehicle and approached the police officers. After the police determined that defendant was not injured, they turned their attention to the Patrick vehicle. They found Patrick unconscious and his passenger semi-conscious. Emergency crews eventually used the "jaws of life" to free Patrick and his passenger and both were transported to a nearby hospital.
The passenger was released the next day, but Patrick sustained serious injuries and remained in the hospital. He suffered two fractured vertebrae and damage to his spinal cord, causing paralysis from his chest down. In addition, he suffered pulmonary contusions, a punctured lung, multiple rib fractures, a laceration on his scalp, and a significant closed head injury, causing loss of consciousness and bleeding in his brain. Patrick was placed on a ventilator for assistance in his breathing. Unfortunately, he was not able to recover. Both Patrick and his family eventually requested to have the ventilator removed. On May 30, 1996, an intravenous morphine drug was administered to Patrick, and the ventilator was removed. Patrick died several hours later.
We return to the scene of the accident. Sergeant Heistand approached defendant who was standing outside of his vehicle. At first, defendant did not believe he had been involved in an accident and said he had been run off the road. After Heistand showed defendant the front-end damage to his vehicle and the paint on his vehicle from Patrick's red vehicle, defendant acknowledged he must have been in an accident. Heistand noticed defendant was swaying and had an odor of alcohol on his breath. Other officers arrived on the scene. Heistand walked away from defendant to speak to Sergeant Allen Sanchez, who was the midnight shift commander. Heistand believed that defendant was under the influence of alcohol and requested Officer Mark Montagna to administer roadside sobriety tests.
Montagna observed that defendant was unsteady. He asked defendant to recite the alphabet, close his eyes and tilt his head back with his arms by his side, and perform the finger-to-nose test. Defendant recited the alphabet correctly, but paused a few seconds between letters about five or six times. Defendant lost his balance after tilting his head backward. On the finger-to-nose test, Montagna instructed defendant to touch his right hand to his nose three times and touch his left hand to his nose twice. Defendant could not follow this sequence and, after two unsuccessful attempts with his right hand, asked "How do I do this again?" Montagna placed defendant under arrest for driving under the influence.
Defendant was then placed in a police car. While in route to the police station, Sergeant Ken Mazza instructed the officers to take defendant to the hospital for a blood test to determine his blood alcohol level. At the hospital, defendant refused to sign the blood test consent, but agreed to have blood drawn. A registered nurse drew three vials of blood. She used two gray-topped glass vials from the police blood alcohol kit and one red-topped glass vial from the hospital to collect the blood. Tests performed at the State Police Laboratory revealed a .19 blood alcohol content while the hospital-tested blood sample resulted in a reading of .18 blood alcohol content.
At trial, the State presented evidence to show that an individual with a blood alcohol content of between .09 and .12 would have impaired judgment and would also increase the tendency to ignore peripheral vision. Further, a driver with a blood alcohol content of .19 would experience double vision and would be 100 times more *452 likely than a sober driver to be involved in an accident. The State's expert testified that a man of defendant's weight would have to consume eleven twelve-ounce regular beers, or eleven five-ounce glasses of twelve-proof wine, or six five-ounce glasses of twenty-proof wine, or twelve ounces of 100-proof liquor, or sixteen ounces of eighty-proof liquor, to reach a blood alcohol content of .19.
In his defense, defendant presented four character witnesses and two witnesses who were with him prior to the accident. Eric Mandrackie testified that on December 29, 1995, between 5:15 p.m. and 8:00 p.m., he and defendant each drank three mugs of beer and one shot of liquor. Keith Fletcher testified that defendant arrived at his house between 8:00 and 9:00 p.m. to celebrate Fletcher's wife's pregnancy. He said defendant stayed a few hours and had two glasses of champagne. Fletcher said that defendant did not appear intoxicated when he left.
Defendant testified consistent with his witnesses' testimony. He claimed he did not feel intoxicated when he left Fletcher's house and did not have any drinks after he left the home. He said he did not fall asleep while driving and did not believe the accident was alcohol-related. Defendant could not recall details of the accident, but claimed it happened too quickly for him to stop. He said he applied his brakes, but could not stop in time. He did not recall telling Heistand at the scene that he did not see the other car and denied he said he was not involved in an accident. Defendant also disputed Montagna's testimony that he failed the sobriety tests, but admitted he caused the accident.
Defendant contends that it was error for the trial judge to instruct the jury that the removal of life support was not an intervening cause of the victim's death. Defendant asserts that the judge's instruction deprived him of a jury finding on the essential element of causation.
The State's evidence showed that the official cause of Patrick's death was pulmonary failure, secondary to repeated bouts of pneumonia and blood clots in his lungs caused by paralysis, and damage to his lungs sustained in the motor vehicle accident. As noted above, Patrick and his family requested that the ventilator be removed. Patrick died a short while later.
Prior to trial, defendant moved to dismiss the indictment on the ground that the termination of Patrick's life support system was an independent cause of death and thus precluded defendant's conviction. In a published opinion, the trial judge, after reviewing the definition of causation in N.J.S.A. 2C:2-3, addressed the issue of "whether the removal of life support from a victim who was not brain dead is an intervening cause sufficient to insulate defendant from liability for aggravated manslaughter." State v. Pelham, 328 N.J.Super. 631, 633, 746 A.2d 557 (Law Div.1998). The judge noted there were no reported decisions in New Jersey on this issue. Therefore, the judge looked to our decision in State v. Watson, 191 N.J.Super. 464, 467 A.2d 590 (App.Div.1983), certif. denied, 95 N.J. 230, 470 A.2d 443 (1983), where we held that the removal of life support from a brain dead victim was not an intervening cause of death as the victim's "`death resulted not from turning off the respirator, but from defendant's acts, which undeniably caused the victim's brain to die'," to deny defendant's motion. Pelham, supra, 328 N.J.Super. at 637, 746 A.2d 557 (citation omitted). The judge found that even though Patrick was not brain dead, it was "evident that the removal of the life support in the instant matter was not an intervening cause because the removal of the life support did not `break the original *453 causation.'" Id. at 638, 746 A.2d 557. The judge explained:
A jury could easily find that the original causation of the victim's death was the defendant's actions. Specifically, the victim would not have been placed on life support but for the defendant driving his vehicle while he was intoxicated into the back of Patrick's vehicle. Accordingly, I find that the State has satisfied the `but for' element of causation.

[Ibid.]
The judge also found that a jury could reasonably infer Patrick's injuries and death "were within the risk of which defendant was aware when he collided into the victim's vehicle on December 29, 1995, while he was intoxicated." Ibid. at 638, 746 A.2d 557. The judge concluded that causation would have to be determined by the jury, but he would instruct the jury that "the removal of life support is not a sufficient intervening cause to relieve defendant of criminal liability." Id. at 639, 746 A.2d 557.
At trial, the judge instructed the jury on causation and intervening cause. For causation, the judge charged:
To establish causation the State must prove two elements beyond a reasonable doubt. First, that but for defendant's conduct William Patrick wouldn't have died. Second, William Patrick's death must have been within the risk of which the defendant was aware. If not it must involve the same kind of injury or harm as the probable result of the defendant's conduct and must also not be too remote, too accidental in its occurrence or too dependent on another's volitional act to have a just bearing on defendant's liability or on the gravity of his offense. In other words, the State must prove beyond a reasonable doubt that William Patrick's death was not so unexpected or unusual that it would be unjust to find the defendant guilty of aggravated manslaughterslaughter.
It is alleged that the victim William Patrick died approximately five months after the collision which occurred on December 29, 1995. With regard to the issue of remoteness there is no requirement that the State prove that the victim died immediately or within a certain period of time after the collision. Nevertheless, you may want to consider the time that elapsed between the collision and William Patrick's death along with all of the other evidence in determining whether the State has proven beyond a reasonable doubt that the defendant caused William Patrick's death as I have defined that term.
The State alleges that William Patrick died as a result of medical complications from the injuries which he sustained in the collision. Subject to the definition of causation which I've already given you the State may satisfy its burden of proving causation by proving beyond a reasonable doubt that William Patrick died from medical complications that resulted from injuries which he sustained in the collision provided that these injuries and medical complications were the precipitating and contributing causes of Mr. Patrick's death.
With regard to the issue of accident, if you find that Mr. Patrick's death resulted from preexisting medical conditions independent of the injuries and accompanying medical complications which he received as a result of the collision as the defendant contends you must find the defendant not guilty. If you find that Mr. Patrick died as a result of his prior medical condition being exacerbated, in other words, made worse by the collision you are instructed that criminal liability is not lessened because the victim is not in excellent health. In other *454 words, if you find beyond a reasonable doubt that the defendant's conduct accelerated or worsened any preexisting medical condition or illness which William Patrick may have had thereby Resulting in his death and meets the other conditions of causations then you should find that the defendant caused Mr. Patrick's death.
For intervening cause, the judge stated:
[a]n intervening cause whichis a cause that breaks the original chain of causation. In that regard you have heard testimony that on May the 30th, 1996 William Patrick was taken off the ventilator pursuant to his wishes and that he died several hours later. I instruct you that the removal of life support, in this case a ventilator, is not a sufficient intervening cause to relieve the defendant of criminal liability. In other words, the removal of life support from Mr. Patrick who was not brain dead was not a sufficient intervening cause to relieve the defendant of criminal liability. If you find that the defendant's actions set in motion the victim's need for life support the causal link between the defendant's actions and the victim's death is not broken by the removal or refusal of life support as long as you find that the death was the natural result of the defendant's actions.

[Emphasis added.]
Defendant contends the trial judge's instruction to the jury that removal of life support is "not a sufficient intervening cause to relieve defendant of criminal liability" essentially deprived him of the constitutional right to have a jury decide that issue.
Before addressing defendant's argument, we note our agreement with the trial judge's decision to deny defendant's motion to dismiss the indictment based on the intervening cause of removal of life support. An intervening cause is defined as "[a]n event that comes between the initial event in a sequence and the end result thereby altering the natural cause of events that might have committed a wrongful act to an injury." Black's Law Directory 212 (7th ed.1999); see also Hellstern v. Smelowitz, 17 N.J.Super. 366, 373, 86 A.2d 265 (App.Div.1952)(stating that the intervening cause must be a cupable and efficient cause and one which destroys the efficient causal connection between the negligent act of the defendant and the injury).
Here, the victim required life support as a result of his multiple injuries sustained in the accident caused by defendant. The victim and his family requested the removal of the life support system and the request was granted. In our view, a jury could reasonably conclude the removal of life support did not alter the natural course of events, but rather allowed Patrick's injury to take its natural course. See People v. Bowles, 461 Mich. 555, 607 N.W.2d 715, 717-18 (2000)(removal of artificial respirator was not an intervening cause, but a natural and inevitable result of the injuries inflicted by defendant); State v. Ruane, 912 S.W.2d 766, 775 (Tenn. Crim.App.1995) (whether the victim's decision to have life support equipment removed insulated defendant from criminal responsibility should be determined by the trier of fact); State v. Yates, 64 Wash.App. 345, 824 P.2d 519, 523 (1992), pet. denied, 119 Wash.2d 1017, 833 P.2d 1390 (1992) (holding that when life support is removed, the cause of death is not the removal but the agency that generated the need for the life support in the first instance). Consequently, we affirm the trial judge's decision denying defendant's pretrial motion to dismiss the indictment.
We turn now to defendant's argument that the judge's instruction to the jury that *455 removal of life support was not a sufficient intervening cause to relieve defendant of criminal liability deprived him of the constitutional right to have a jury decide that issue.
Defendant was charged with criminal homicide. The relevant Code section provides that "[c]riminal homicide constitutes vehicular homicide when it is caused by driving a vehicle recklessly." N.J.S.A. 2C:11-5a. As part of its proofs, the State must establish a causal relationship between defendant's conduct and the resulting harm to the victim. See State v. Jamerson, 153 N.J. 318, 336, 708 A.2d 1183 (1998). "[A]n accused is constitutionally entitled to have a jury find each factual element beyond a reasonable doubt before he or she is convicte[d]", and "a court may never instruct a jury to find against a criminal defendant on any factual issue that is an element of the crime charged." State v. Anderson, 127 N.J. 191, 200, 603 A.2d 928 (1992). Causation is an essential element of the offense within the province of the jury's determination.
The right to a trial by jury is guaranteed by the Sixth Amendment of the United States Constitution and Art. I, par. 9 of the New Jersey Constitution. See State v. Ingenito, 87 N.J. 204, 210, 432 A.2d 912 (1981). It is the jury's determination of the facts from the evidence submitted at trial that establishes the innocence or guilt of a defendant. Id. at 211, 432 A.2d 912. As the Court explained:
The responsibility of the jury in the domain of factual findings, and ultimate guilt or innocence, is so pronounced and preeminent that we accept inconsistent verdicts that accrue to the benefit of a defendant ...
Indeed, a jury has the prerogative of returning a verdict of innocence in the face of overwhelming evidence of guilt. It may also refuse to return a verdict in spite of the adequacy of the evidence... This is indicative of a belief that the jury in a criminal prosecution serves as the conscience of the community and the embodiment of the common sense and feelings reflective of society as a whole. (citations omitted)

[State v. Ingenito, 87 N.J. 204, 211-12, 432 A.2d 912 (1981).]
In Ingenito, supra, the Court addressed the question whether the use of collateral estoppel in a criminal trial impinged upon defendant's right to a trial by jury. The Court answered the question in the affirmative, holding that the "application of collateral estoppel against a defendant constitutes an invasion of the factfinding and ultimate decisional functions of the jury." Id. at 213, 432 A.2d 912. Further, the Court emphasized that the trial judge "must take care to ensure that the jury enter its deliberations without preconceived views as to the existence of any essential element of the offense or the guilt of the defendant." Id. at 214, 432 A.2d 912. In support of this view, the Court referred to its opinion in State v. Humphreys, 54 N.J. 406, 255 A.2d 273 (1969), where the Court invalidated a jury charge in connection with a statutory presumption because it improperly relieved the State of its burden of proof. Ingenito, supra, 87 N.J. at 215, 432 A.2d 912.
The Court addressed a similar problem in State v. Ragland, 105 N.J. 189, 519 A.2d 1361 (1986). In Ragland, defendant was charged with unlawful possession of a weapon and possession of a weapon by a convicted felon. The charges were severed. The jury first found defendant guilty of unlawful possession of a weapon and then returned to decide the possession of a weapon by a convicted felon offense. The trial judge charged the jury that if you find defendant "was previously convicted of the crime of robbery and that he was in possession of a sawed-off shotgun as you have indicated ... then you must *456 find him guilty as charged by this Court." Id. at 192, 519 A.2d 1361. The Court reversed, finding that the effect of the charge was to direct a guilty verdict. Id. at 193, 519 A.2d 1361. The Court gave guidance for future trials in related matters as follows:
What is needed in such a matter is a strong instruction to the jury to disregard its prior verdict of possession ... advising the jury that it is the State's burden to prove that fact beyond a reasonable doubt, allowing the jury, however, to consider the evidence that had previously been brought before it on the possession charge ... We need not determine whether this error was harmless beyond a reasonable doubt, for when the constitutional deprivation consists of a directed verdict, preservation of the integrity of the right to trial by jury requires reversal.

[Id. at 195-96, 519 A.2d 1361.]
Applying these principles here, we conclude the trial judge's instructions on intervening cause deprived defendant of the opportunity to have the jury decide the essential issue of causation. The issues of causation and intervening cause should generally be left to the jury for its factual determination. Lynch v. Scheininger, 162 N.J. 209, 235, 744 A.2d 113 (2000); State v. Martin, 119 N.J. 2, 16-17, 573 A.2d 1359 (1990); Rappaport v. Nichols, 31 N.J. 188, 203, 156 A.2d 1 (1959). See State v. Maldonado, 137 N.J. 536, 569-70, 645 A.2d 1165 (1994). In the context of the entire charge, the language that "the removal of life support from Mr. Patrick who was not brain dead was not a sufficient intervening cause to relieve the defendant of criminal liability", coupled with the further charge that if the jury found "defendant's actions set in motion the victim's need for life support the causal link between defendant's actions and the victim's death is not broken by the removal or refusal of life support," essentially removed that issue from the jury and had the potential to be construed by the jury that the State had proven the element of causation. We conclude the charge to the jury on intervening cause deprived defendant of his constitutional right to have the jury in a criminal trial to decide all elements of the charged offense.
On remand, the trial judge should instruct the jury on the elements of causation and intervening cause. The judge, however, should modify the jury instruction to delete any language that suggests the State had met its burden of proof on the issue of causation, or that the termination of life support was or was not a break in the chain of causation.
Because we reverse defendant's conviction, we find no need to address defendant's remaining arguments.
We reverse and remand for a new trial.